# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
Filed: January 24, 2014

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * | | **PUBLISHED** |
| TESSIE DINGLE, | * | |
| | * | |
| Petitioner, | * | No. 08-579V |
| | * | |
| | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' fees and costs; excessive fees |
| AND HUMAN SERVICES, | * | and costs; attorneys' hourly rates; |
| | * | paralegals' hourly rates; vague or excessive |
| Respondent. | * | time entries |
| * * * * * * * * * * * * * * * * * * * * * | | |

Richard Gage, Richard Gage, P.C., Cheyenne, WY, for petitioner.
Alexis B. Babcock, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

### I.      Introduction

On August 14, 2008, Tessie Dingle ("petitioner") filed a petition under the National Vaccine Injury Compensation Program ("the Program")[2] alleging that she developed postural tachycardia syndrome ("POTS") as a result of the hepatitis B and tetanus-diphtheria ("Td") vaccines she received on August 15, 2005.  Petition at 1.  Petitioner filed an amended petition on April 27, 2009, which contained the same allegations.  Amended Petition at 1.  A one-day hearing took place in Washington, DC, on July 20, 2012.  On July 23, 2013, Chief Special

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  Otherwise, "the entire" decision will be available to the public.  Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) ("Vaccine Act").  All citations in this order to individual sections of the Act are to 42 U.S.C. § 300aa.

Master Campbell-Smith, who was previously assigned to this case, denied compensation under the Program.  Dingle v. Sec'y of Health & Human Servs., No. 08-579V, 2013 WL 4083220, at *2 (Fed. Cl. Spec. Mstr. July 23, 2013) ("Entitlement Decision").

On October 28, 2013, petitioner filed an "Application for Award of Final Attorney's Fees and Reimbursement of Costs" ("fee application" or "Fee App.") to reimburse her counsel of record, Mr. Richard Gage, for the hours and costs he expended on petitioner's behalf.  Fee App. at 1.[3]  Petitioner requests a total of $178,814.85 in attorneys' fees and costs in the fee application.  Id.

Respondent objects to petitioner's request on the ground that it is excessive.  Respondent asserts that the number of hours petitioner's counsel and experts expended in this case is unreasonable.  Respondent's Objections to Petitioner's Application for Attorneys' Fees and Costs ("Resp't's Resp."), filed Nov. 13, 2013, at 6, 8.  Respondent also claims that many of the activities for which petitioner requests compensation are not compensable.  Further, respondent asserts that some of the hourly rates that petitioner's counsel and experts seek are unreasonably high.  Id. at 6, 9, 11, 13.

Petitioner was permitted to file a reply to respondent's response by December 13, 2013.  See Order, filed Nov. 15, 2013, at 1.  Petitioner filed a response on December 20, 2013, approximately one week after the deadline established in the November 15, 2013 Order.  Id. ("Petitioner may file a Reply . . . by [December 13, 2013].");  Pet'r's Reply to Respondent's Objections to Petitioner's Award of Final Attorney's Fees and Reimbursement of Costs ("Pet'r's Resp.").

On December 30, 2013, petitioner filed a supplemental motion for attorneys' fees and costs.  Supplement to Final Attorneys' Fees and Costs Petition ("Suppl. App."), in which she requests an additional $6,662.61 in fees and costs for a grand total of $185,477.46.  Id. at 8.  Respondent filed a reply to petitioner's supplemental application on January 9, 2014.  Reply to Petitioner's Supplemental Motion for Attorney's Fees and Costs ("Resp't's Reply").  The matter is now ripe for adjudication.

## II.    Analysis

### A. Applicable Legal Standards

Although her petition was denied, petitioner is entitled to an award of reasonable attorneys' fees and costs because the undersigned finds that she brought her petition in good faith and with a reasonable basis.  § 300aa-15(e)(1).  Likewise, respondent "does not contest that petitioner is entitled to an award of reasonable attorneys' fees and costs."  Resp't's Resp. at 2 (citing § 300aa-15(e)(1)).

Petitioner "bears the burden of establishing the hours expended."  Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991) (affirming special master's reduction of fee applicant's hours due to inadequate recordkeeping), aff'd after remand, 988 F.2d 131 (Fed. Cir.

---

[3] Because petitioner did not paginate her fee application, citations to it refer to CMECF pagination.

1993) (per curiam).  Reasonable attorneys' fees are determined by "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  <u>Avera v. Sec'y of Health & Human Servs.</u>, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)).  Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs, <u>Perreira v. Sec'y of Health & Human Servs.</u>, 27 Fed. Cl. 29, 34 (1992), <u>aff'd</u>, 33 F.3d 1375 (Fed. Cir. 1994), and may increase or reduce the initial fee award calculation based on specific findings.  <u>Avera</u>, 515 F.3d at 1348.  The requirement that attorneys' fees be reasonable applies likewise to costs.  <u>Perreira</u>, 27 Fed. Cl. at 34 ("Not only must any request for attorneys' fees be reasonable, so must any request for reimbursement of costs").

In making reductions, a line-by-line evaluation of the fee application is not required.  <u>Wasson</u>, 24 Cl. Ct. at 484, <u>rev'd on other grounds and aff'd in relevant part</u>, 988 F.2d 131 (Fed. Cir. 1993).  Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended.  <u>Id.</u>  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  <u>Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### B.  Reasonable Attorneys' Fees and Costs

Petitioner's fee application will be discussed in order of respondent's objections and petitioner's responses to respondent's objections.

### 1.  Attorneys Gage and Gerstein Hourly Rate for 2013

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  <u>Avera</u>, 515 F.3d at 1348 (quoting <u>Blum</u>, 465 U.S. at 896).  Where, as here, the majority of an attorney's work is completed outside the District of Columbia and there is a "very significant difference" between the forum hourly rate and the local hourly rate, an attorney's fee award should be based on a local hourly rate.  <u>Id.</u> at 1349 (holding that the market rate in Cheyenne, Wyoming, is significantly lower than the market rate in Washington, District of Columbia).  Accordingly, a reasonable hourly rate for Mr. Gage is that of a lawyer of "reasonably comparable skill, experience, and reputation" in Cheyenne, Wyoming.  <u>See id.</u>

Mr. Gage seeks an hourly rate of $270.00 for himself and his co-counsel, Mr. Don Gerstein, for the hours they expended in 2013.  <u>See</u> Fee App. at 22.  Respondent asserts that an appropriate hourly rate is $260.00.  Resp't's Resp. at 4.  Respondent notes that Mr. Gage was recently awarded an hourly rate of $260.00, but not the $270.00 per hour that he requests, for work performed in 2013.  <u>Id.</u> (citing <u>Walters v. Sec'y of Health & Human Servs.</u>, No 06-379V, 2013 WL 4874319, at *3 (Fed. Cl. Spec. Mstr. Aug. 22, 2013) and <u>Lawrence v. Sec'y of Health & Human Servs.</u>, No. 09-435V, 2013 WL 3146775, at *4 (Fed. Cl. Spec. Mstr. May 28, 2013)).

Petitioner maintains that an hourly rate of $270.00 for Mr. Gage for 2013 is justified.  Pet'r's Resp. at 3.  Petitioner asserts that a $10.00 increase from the $260.00 per hour Mr. Gage charged in 2010 does not keep up with inflation.  <u>Id.</u> at 4.  Petitioner further argues that the

increase is justified because the Wyoming economy is faring better than the national economy. Id.  Lastly, petitioner notes that respondent did not object to Mr. Gage seeking (and being awarded) an hourly rate of $270.00 for 2013 in other cases.  Id. at 4 (citing Bevill v. Sec'y of Health & Human Servs., No. 06-809V; Bevill v. Sec'y of Health & Human Servs., No. 06-795V; Bevill v. Sec'y of Health & Human Servs., No. 06-808V).

>   As noted in Lawrence,

>   Mr. Gage has practiced in the Vaccine Program for many years, and other special masters have determined the reasonableness of his hourly rate, or the hourly rate of another attorney of similar experience from Cheyenne, Wyoming, in a series of decisions in recent years . . . [T]hose recent decisions have determined that the reasonable hourly rate for attorneys of similar experience practicing in Cheyenne, Wyoming, for work performed between 2005 and 2012, falls between $200–$250 per hour.

2013 WL 3146775, at *4.  Based on the above, the special master in Lawrence and Walters found that $260.00 was a reasonable hourly rate for the work Mr. Gage and Mr. Gerstein performed in 2013.  Id.; Walters, 2013 WL 4874319, at *3.  The undersigned finds the reasoning of Lawrence and Walters persuasive and awards Mr. Gage and Mr. Gerstein an hourly rate of $260.00 for the work they performed in 2013.  This results in a reduction of $500.00 from petitioner's fee application.

### 2.  Paralegals' Hourly Rate

Petitioner seeks an hourly rate of $125.00 for the time paralegals spent throughout the course of this matter.  See, e.g., Fee App. at 25.[4]  Respondent asserts that this rate is inappropriately high.  See Resp't's Resp. at 6-7.  Respondent asserts that the identity of the paralegals is unknown and, therefore, it is not possible to determine whether their hourly rate of $125.00 is reasonable.  Id.  Respondent notes that the special master in Lawrence awarded Mr. Gage's paralegals an hourly rate of $100.00 for work completed in 2013, but argues that Mr. Gage's paralegals deserve less, because paralegals in New York City and Boston, where the cost of living is much higher than in Cheyenne, have been awarded an hourly rate of $95.00.  Id. at 6-7.  Respondent also objects to any award for secretarial tasks the paralegals performed.  Id. at 7.

Petitioner argues that respondent's assertion that petitioner's paralegals billed for secretarial tasks is inaccurate because the paralegals do not bill for such tasks.  Pet'r's Resp. at 6.  Providing background information on the paralegals, petitioner asserts that their hourly rate of $125.00 is reasonable.  Pet'r's Resp. at 6.

For the reasons set forth in Lawrence, the paralegals will be awarded an hourly rate of $100.00.  This results in a reduction of $2,190.00[5] from petitioner's fee application.

---

[4] Respondent does not object to the hourly rate of $50.00 for the five hours one paralegal spent. See Fee App. at 36.

[5] Petitioner's counsel appears to have miscalculated the total number of compensable paralegal hours.  According to the billing statements, three of the paralegals worked a total of 87.6 hours at $125 per hour, which would have incurred $10,950.00 in paralegal costs, not $10,824.50 as

### 3.   The Number of Hours Expended

Respondent objects to "numerous tasks performed by [petitioner's] . . . attorneys and paralegals."  Resp't's Resp. at 8.  Respondent has three specific objections, discussed below.

### a.   Paralegals' Hours

Respondent asserts that petitioner has not provided evidence as to "who performed the paralegal work . . . [or] what qualifies these individuals as paralegals versus secretarial personnel."  Id. at 7.  Respondent further asserts that many paralegal entries are not compensable as such because they are secretarial in nature.  Id.  "Respondent has specific objections to numerous secretarial tasks.  See Fee App. at 27 (one hour billed on April 4, 2011, for burning case materials to a DVD for Dr. Byers), 28 (0.5 hours billed to find physical files and give them to 'Rabbi Harley'), 31 (0.5 hours billed to make photocopies of medical articles and mail them to Dr. Byers's assistant), 33 (one hour billed to convert a .pdf document to Word)."  Id.

Petitioner states that the paralegals billed only for paralegal work, not secretarial work.  Pet'r's Resp. at 6.  But petitioner does not address how these specific tasks are not secretarial in nature.

The undersigned finds that these entries are not compensable.  This results in a reduction of $300.00 from petitioner's fee application.

### b.   Vague or excessive entries

Respondent objects to any award of attorneys' fees and costs for a number of tasks performed by Mr. Gage and his paralegals based on "vague or excessive" entries.  See Resp't's Resp. at 8-9.  These objections are discussed and resolved in turn.

Respondent objects to entries for "medical research" and "researching experts" between July 2010 and May 2011.  Mr. Gage is entitled to compensation for researching experts and relevant medical literature.

Mr. Gage's entries for medical research also contain information about other tasks that he performed.  See, e.g., Fee App. at 10 ("7/22/10 . . . File Review, Prep for Status Conference, Medical Research, Status Conference, Research, Phone With Doctor . . . 1.9 [hours]); id. at 14 ("04/14/11 . . . Medical records review, legal research, medical literature research . . . 4.8 [hours]").  There is no entry for medical research alone.  Thus, it is difficult to assess how much time he spent on medical research.  "A greater amount of specificity plus a division of large blocks of time (such as four hours) into smaller units would communicate more clearly how time was being spent."  Caves v. Sec'y of Health & Human Servs., No. 07-443V, 2012 WL 6951286,

---

reported by Mr. Gage.  At $100 per hour, petitioner's counsel is entitled to reimbursement for $8,760.00 of that amount.

at *10 (Fed. Cl. Spec. Mstr. Dec. 20, 2012), aff'd, 111 Fed. Cl. 774 (2013); see also Guidelines for Practice under the National Vaccine Injury Compensation Program (Office of Special Masters, United States Court of Federal Claims, November 2005) ("Guidelines"), at XIV.A.3 ("Each task should have its own line entry indicating the amount of time spent on that task").

Nonetheless, the entries that Mr. Gage reports researching medical literature amount to 7.1 hours (at $260.00 per hour). The undersigned finds this a reasonable amount of time for Mr. Gage to have spent researching experts and medical literature.

Respondent objects to the 11 hours Mr. Gage's paralegal spent reading the entitlement decision and preparing an outline. Resp't's Resp. at 8. Petitioner asserts that the lengthy decision justifies the amount of time expended. Pet'r's Resp. at 8.

The undersigned agrees that 11 hours (at $125.00 per hour) is unreasonably excessive; 5.5 hours (at $100.00 per hour) is sufficient. This results in a reduction of $550.00 from petitioner's fee application.

Respondent objects to Mr. Gage's entries on five dates (0.1 hour for "File Review" on Mar. 19, 2010; 0.3 hours for "File review" on Apr. 13, 2011; 4.9 hours for "research, legal and medical" on Apr. 15-16, 2011; 1.0 hour for "Researched Defense" on Aug. 8, 2011; 0.2 hours for "File review" on Jan. 12, 2012) that she claims are "overly vague" such that "a meaningful evaluation of whether the requested time is reasonable" is not possible. Resp't's Resp. at 8.

Petitioner argues that respondent's objection that Mr. Gage's billing entries are not specific enough is unfounded. Pet'r's Resp. at 8-9. Petitioner maintains that Mr. Gage's billing practices are acceptable and that "[c]ourts have explicitly rejected this general objection to block billing." Pet'r's Resp. at 9. Petitioner cites numerous cases from various jurisdictions in support of this argument.

Petitioner's arguments are unpersuasive. Mr. Gage's attorneys' fees and costs requests in the past have been reduced due to lack of specificity and block billing. See, e.g., Doe 11 v. Sec'y of Health & Human Servs., No. XX-XXXV, 2010 WL 529425, at *8 (Fed. Cl. Spec. Mstr. Jan. 29, 2010). Further, Mr. Gage's lack of specificity as to portions of the bills does not comport with the Guidelines. Guidelines at XIV.A.3 ("Each task should have its own line entry indicating the amount of time spent on that task"). These vague entries will not be compensated. This results in a reduction of $1,690.00 (6.5 hours at $260.00).

### c. The hours requested for drafting the closing and reply briefs

Respondent objects to the time Mr. Gage and Mr. Gerstein spent preparing post-hearing briefs. Respondent asserts that all 7.7 hours Mr. Gerstein spent on the reply brief were unnecessary, and maintains that the time Mr. Gage spent on the post-hearing brief (47.3 hours) and the reply brief (26.1 hours) is excessive. Both briefs were completed in 2013 at a rate of $270.00, for a total of $19,818.00.

Petitioner asserts that Mr. Gerstein's work was necessary. Pet'r's Resp. at 11. Petitioner further asserts that the number of hours spent was reasonable. Pet'r's Resp. at 11.

The undersigned finds that Mr. Gage spent an excessive amount of time on these briefs. Mr. Gage spent 47.3 hours preparing a 13-page brief. Pet'r's Post-Hearing Br., filed Nov. 17, 2012. The first page and a half are an overview of petitioner's medical history. Id. at 1-2. The next three pages include an overview of pertinent legal standards. Id. at 2-5. The next page is a recitation of petitioner's experts' credentials. Id. at 5-6. Pages six through thirteen provide petitioner's substantive argument. Id. at 6-13.

Mr. Gage requests compensation for 26.1 hours for preparing petitioner's post-hearing reply brief. This 9-page brief responds to respondent's post-hearing brief, primarily by discussing petitioner's medical records and criticizing respondent's interpretation of them.

The undersigned reduces Mr. Gage's time on post-hearing briefs by 20%. Accordingly, Mr. Gage is awarded $15,267.20. This results in a reduction of $3,816.80 from petitioner's fee application.

Moreover, the undersigned finds the 7.7 hours Mr. Gerstein spent on petitioner's post-hearing reply brief to be duplicative and unnecessary. Mr. Gerstein will not be compensated for this work. This results in a reduction of $2,002.00 from petitioner's fee application.

### d. Compensation for correcting filing errors

Respondent objects to petitioner's request for compensation for the time expended correcting filing errors. Mr. Gage and his paralegal spent 0.4 and 6.9 hours, respectively, to re-file exhibits due to a previous filing error.

Petitioner argues that the filing errors were due to exhibits being too large. Pet'r's Resp. at 12. Petitioner argues that this kind of error does not justify a reduction for the time spent correcting it. Pet'r's Resp. at 13.

As indicated in the Order filed on February 10, 2012, the filing errors were due to petitioner filing too many exhibits at one time and filing multiple articles as one exhibit in violation of the applicable Vaccine Rules. Order, filed Feb. 10, 2012, at 1-2 (citing Vaccine Rule 8(c)). The undersigned agrees with respondent that petitioner should not be compensated for correcting the filing errors. This results in a reduction of $794.00 from petitioner's fee application.

### e. Dr. Greenspan's Invoice[6]

Respondent objects to an award of compensation for the work Dr. Mark Greenspan performed on this case on the ground that his work was unnecessary. Resp't's Resp. at 9. Respondent asserts that Dr. Greenspan's primary task was to complete a summary of petitioner's medical records, which respondent maintains could have been performed by a paralegal. Id. at 10. Respondent further objects to the amount of time Dr. Greenspan expended (45.25 hours at $250 per hour). Id.

---

[6] Dr. Greenspan has a medical degree as well as a law degree, see Fee App. at 71, and has participated in the Program as an attorney. See, e.g., Dobrydneva v. Sec'y of Health & Human Servs., 98 Fed. Cl. 190, 191 (2011). As discussed below, it is unclear whether Dr. Greenspan served as a medical expert and/or co-counsel to Mr. Gage in this matter.

Petitioner maintains that Dr. Greenspan's involvement was necessary.  Pet'r's Resp. at 13.
Dr. Greenspan reviewed petitioner's medial records and created an outline of petitioner's
medical history and care.  Pet'r's Resp. at 14.  Dr. Greenspan's "main contribution" was
"teaching [Mr. Gage] what really happened to [petitioner] . . . and how, medically, to approach
this case . . . .  After educating [Mr. Gage] . . . the proper experts were retained and this case was
prosecuted."  Pet'r's Resp. at 14.

Because Dr. Greenspan did not submit an expert report in this matter, it is difficult to
determine why he was retained or whether the work he performed was necessary.  It appears that
respondent is correct that Dr. Greenspan primarily reviewed and summarized petitioner's
medical records.  See Fee App. at 71-72.  Although Dr. Greenspan apparently drafted a "factual
summary/history" of an expert report, see id., there is no indication that he performed any
substantive medical research or analysis, nor did he provide an expert report.  Furthermore,
petitioner's previous counsel performed a significant review and summary of petitioner's
medical records.  See, e.g., Fee App. at 103; Amended Petition, filed Apr. 27, 2009, at 2-14.

Dr. Greenspan's final entry states "[t]elephone call from Maintenance/Repair.  Gage.
Email narrative summary to Doctor Shoenfeld."  Fee App. at 72.  The reference to a phone call
from "Maintenance/Repair" is nonsensical and will not be compensated.  Likewise, the time
spent discussing this matter with Dr. Shoenfeld will not be compensated because there is no
suggestion that Dr. Schoenfeld was involved in this case.

Moreover, Dr. Greenspan performed all of his work on this matter in December 2010.
See id. at 71-72.  Petitioner filed a status report on December 27, 2010, stating that her expert
was in the process of writing a report.  Pet'r's Status Rep't, filed Dec. 27, 2010, at 1. Petitioner
was ordered to file that report by January 28, 2011.  See Order, filed Dec. 29, 2010, at 1.
Petitioner did not comply with that order.  See Show Cause Order, filed Jan. 31, 2011, at 1.
Instead, petitioner submitted a status report on February 9, 2011, stating that she was "attempting
to retain" an expert, but lacked the funds to do so.  See Pet'r's Status Rep't, filed Feb. 9, 2011, at
1.  Ultimately, on May 27, 2011, petitioner filed a status report in which she confirmed that
petitioner had retained Dr. Marcel Kinsbourne to provide an expert opinion on her behalf.  See
Pet'r's Status Rep't, filed May 27, 2011, at 1.  It does not make sense to compensate Dr.
Greenspan for drafting an expert report that was never filed in this case.  Moreover, Mr. Gage
later represented that petitioner did not have funds to retain an expert, implying that petitioner
did not have an expert in December 2010, at the time that Dr. Greenspan billed for his work.

In summary, it appears the only compensable work Dr. Greenspan performed on this
matter was a review and summary of petitioner's medical records, and he will be awarded half
his requested amount ($5,656.25).  This results in a reduction of $5,656.25 from petitioner's fee
application.

### f.  Dr. Kinsbourne

Petitioner requests a total of $35,325.00 for Dr. Kinsbourne's work on this case.  Fee
App. at 70.  Respondent objects to Dr. Kinsbourne's requested hourly rate of $500.00.  Pet'r's
Resp. at 14-19.  Respondent also objects to a number of Dr. Kinsbourne's billing entries as

vague, excessive, and/or unreasonable.  Id.  Petitioner asserts that both the amount of time Dr. Kinsbourne spent and his hourly rate of $500.00 are reasonable.  Id.

Dr. Kinsbourne previously has been awarded an hourly rate of $500.00, but the undersigned finds that Dr. Kinsbourne's requested hourly rate of $500.00 is excessive here.  Dr. Kinsbourne's being awarded $500.00 in previous cases was notably unusual.  See, e.g., Simon v. Sec'y of Health & Human Servs., No. 05-941V, 2008 WL 623833, at *6 (Fed. Cl. Spec. Mstr. Feb. 21, 2008); Adams v. Sec'y of Health & Human Servs., No. 01-267V, 2008 WL 2221852, at *2 (Fed. Cl. Spec. Mstr. Apr. 30, 2008).  In many other cases, he was awarded less.  See, e.g., Stone v. Sec'y of Health & Human Servs., No. 90-1041, 2010 WL 3790297, at *6 (Fed. Cl. Spec. Mstr. Sept. 9, 2010) (Dr. Kinsbourne awarded $300.00 per hour); Hammitt v. Sec'y of Health & Human Servs., No. 07-170V, 2011 WL 1827221, at *7 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (Dr. Kinsbourne awarded $300.00 per hour).

In Simon, petitioner requested that Dr. Kinsbourne receive an hourly rate of $500.00 for part of the time he spent on his case.[7]  The chief special master indicated that

> Dr. Kinsbourne's billing request, as that of all experts, will be scrutinized for the efficient use of time and for time spent and required as an expert. That is, the expectation will be that the expert will bring to the case a reservoir of foundational knowledge that will not be refilled on the billable time submitted to the Program. It is understood that some vaccine cases raise rather unique issues requiring substantial research, that is acceptable. However, foundational research or research of the same issue in repeated cases will be found unacceptable, and not compensated.

Id. at *8.  Further, the chief special master found that Dr. Kinsbourne's "expert hourly rate is deserved only for those hours spent as an expert . . . [because] [u]nrelated services provided to counsel, such as consulting and strategy, selection of experts, or trial tactics, while legitimate and even valuable services, are not the services of a medical expert and should not be compensated as such."  Id.

The chief special master noted that

> the parties and the court do agree that Dr. Kinsbourne's experience, qualifications, publications, academic affiliations, and active participation in Vaccine Program cases since its inception (insofar as knowledge should result in more efficient use of an expert's time), entitle[d] him to charge and receive a higher hourly rate than most petitioners' experts.

Id. at *7.  Moreover, Dr. Kinsbourne had significant experience testifying in cases concerning injuries similar to those at issue in Simon, namely, encephalopathy and seizures.  Id.  This prior experience allowed Dr. Kinsbourne to "draw upon past work in the Program . . . to minimize the number of hours that otherwise would be necessary to work on a particular case," which justified a higher rate.  Id.  The chief special master therefore found that Dr. Kinsbourne deserved an

---

[7] In Simon, Dr. Kinsbourne requested a rate of $300.00 an hour for time spent prior to December 2006 and requested $500.00 an hour thereafter.  2008 WL 623833, at *8.  Respondent only objected to Dr. Kinsbourne's requested hourly rate of $500.00.  Id. at *1.

hourly rate of $500.00 because "Dr. Kinsbourne was found credible and provided very good expert services" due to his "knowledge and efficiency." 2008 WL 623833, at *7. The chief special master awarded Dr. Kinsbourne an hourly rate of $300.00 for the time spent "consulting with counsel." Id. at *8.

Here, the record does not indicate that Dr. Kinsbourne's "specialized knowledge and experience" justifies his requested hourly rate of $500.00. In Simon, Dr. Kinsbourne spent 31.75 hours on the case, 2008 WL 623833 at *8, but he spent 70.65 hours on this case. In both Simon and this case, Dr. Kinsbourne submitted one report and testified at a one-day hearing. See Simon v. Sec'y of Health & Human Servs., 2007 WL 1772062, at *1 (Fed. Cl. Spec. Mstr. June 1, 2007); Entitlement Decision at 2, 5. In Simon, Dr. Kinsbourne was petitioner's only expert and petitioner was found to be entitled to compensation. Here, petitioner also relied on Dr. Byers, an immunologist. See Entitlement Decision at 21. Furthermore, in this case, unlike in Simon, the chief special master indicated that Dr. Kinsbourne's testimony at the hearing was detrimental to petitioner's case because "it [was] contradicted by the literature filed by both petitioner and respondent." Id. at 42. Dr. Kinsbourne also erroneously testified that petitioner had asthma. Id. at 7.

The undersigned finds that the record does not indicate that Dr. Kinsbourne's testimony demonstrated "specialized knowledge and efficiency" to justify an hourly rate of $500.00. Moreover, the Entitlement Decision indicates that Dr. Kinsbourne was not as familiar with the record as he could have been when he testified at the hearing. See Entitlement Decision at 7. The chief special master also questioned whether the sources on which Dr. Kinsbourne relied supported his opinion. See Entitlement Decision at 22. Accordingly, the undersigned finds a reasonable hourly rate for Dr. Kinsbourne is $400.00.

Dr. Kinsbourne spent 70.65 hours on this matter. Dr. Kinsbourne will be awarded a half hourly rate for the 13 hours he spent traveling ($200.00 per hour). See Fee App. at 70. Accordingly, petitioner is awarded $25,660.00 for Dr. Kinsbourne's services. This results in a reduction of $9,665.00 from petitioner's fee application.

### g. Dr. Byers

Respondent objects to the hourly rate of $400.00 that Dr. Byers requests and the amount of time she spent on this case. Resp't's Resp. at 13. Respondent contends that the chief special master had "clear concerns about [Dr. Byers's testimony] in this case," and that the quality of her testimony does not justify an hourly rate of $400.00. Id.

Petitioner contends that Dr. Byers should receive an hourly rate of $400.00. Pet'r's Resp. at 19. Petitioner also asserts that Dr. Byers spent a reasonable amount of time on this case. Pet'r's Resp. at 20.

The undersigned agrees with respondent that Dr. Byers's requested rate of $400.00 is excessive here, primarily because the chief special master "found several matters about Dr. Byers' testimony to be of concern." Entitlement Decision, at 21. Notably, the chief special master found that Dr. Byers "was unable to support her assertions—even when afforded an opportunity to do so after the hearing—with either record citations or pinpoint cites to the literature." Id. at 22. The chief special master also questioned "whether Dr. Byers was able to

concentrate properly during the hearing." Id. at 23.  Simply stated, the undersigned reads the chief special master's decision to indicate that, at best, Dr. Byers was not fully prepared.  This justifies both a reduction in Dr. Byers's hourly rate and a reduction in the amount of hours for which Dr. Byers is reasonably compensated.

Accordingly, the undersigned awards Dr. Byers an hourly rate of $300.00.  Travel time will be awarded at one-half that rate ($150.00 per hour).

Dr. Byers billed 19 hours for travel time at an hourly rate of $200.00 and 39 hours at an hourly rate of $400.00 for her expert services.  Dr. Byers is awarded $14,550.00.  This results in a reduction of $4,150.00 from petitioner's fee application.[8]  See Fee App. at 67.

### h.  Petitioner's Supplemental Application

Petitioner requests an additional $6,662.61 in fees and costs for the time her counsel expended on petitioner's response to respondent's objections to petitioner's fee application.  In her reply to the supplemental application, respondent makes a "continued objection" to Mr. Gage's hourly rate of $270.00 and the $125.00 hourly rate for his paralegal.  Respondent asserts that the 23.4 hours Mr. Gage spent replying to respondent's objections is excessive.

As discussed above, the undersigned finds Mr. Gage's $270.00 hourly rate is excessive.  Mr. Gage will be awarded at an hourly rate of $260.00.  Likewise, Mr. Gage's paralegals will be awarded at an hourly rate of $100.00.

The undersigned also finds that Mr. Gage appears to have miscalculated the amount of time he spent formulating a response to respondent's objections to his fee application.  Although he reported having spent 23.4 hours on this task, his billing statement reflects that he only spent 19.5 hours.  See Suppl. App., Tab C, at 8.

The undersigned finds that 22 hours (19.5 attorney hours plus 2.5 paralegal hours) is a reasonable amount of time for Mr. Gage to have spent on his reply.  The reduction in hourly rate results in a reduction of $1,310.50.  See Suppl. App. at 8-9.

### III.    Conclusion

| Activity | Reduction |
| --- | --- |
| Mr. Gage's and Mr. Gerstein's 2013 hourly rate | $500.00 |
| Paralegals' hourly rate | $2,190.00 |
| Paralegals' secretarial tasks | $300.00 |

---

[8] A hand-written correction on Dr. Byers's invoice indicates that she requests $18,700.00 instead of $19,400.00 as indicated on her invoice.

| | |
|---|---|
| Paralegals reading decision | $550.00 |
| Mr. Gage's block billing | $1,690.00 |
| Mr. Gage's post-hearing briefing | $3,816.80 |
| Mr. Gerstein's post-hearing briefing | $2,002.00 |
| Filing errors | $794.00 |
| Dr. Greenspan | $5,656.25 |
| Dr. Kinsbourne | $9,665.00 |
| Dr. Byers | $4,150.00 |
| Supplemental application | $1,310.50 |
| **TOTAL REDUCTIONS** | **$32,624.55** |

A total of $32,624.55 is reduced from petitioner's fee application. Accordingly, a total of $146,190.30 shall be awarded as follows:

- A lump sum of **$120,830.98**, in the form of a check payable jointly to petitioner and petitioner's counsel, Richard Gage, P.C.; and

- A lump sum of **$25,359.32**, in the form of a check payable jointly to petitioner and petitioner's former counsel, Conway, Homer & Chin-Caplan, P.C.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accord with this decision unless a motion for review is filed.[9]

**IT IS SO ORDERED.**

<u>S/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing a notice renouncing the right to seek review.